**TRANS AMERICA RECOVERY SERVICES, INC., Plaintiff,**

v.

**PUERTO RICO MARITIME SHIPPING AUTHORITY, Defendant.**

Civ. No. 92–1733 (JP).

United States District Court, D. Puerto Rico.

April 21, 1993.

Ramonita Pérez de Gotay, Feldstein, Gelpí, Hernández & Gotay, Old San Juan, P.R., for plaintiff.

Juan A. Moldes Rodríguez, Saldaña, Rey & Alvarado, Santurce, P.R., for defendant.

### OPINION AND ORDER

PIERAS, District Judge.

This is an action for breach of contract filed by Trans America Recovery Services, Inc. against Puerto Rico Maritime Shipping Authority (hereinafter "PRMSA") to recover

damages suffered as the result of PRMSA's alleged unjustified cancellation of a contract (hereinafter the "contract") which appointed plaintiff as PRMSA's demurrage billing and collection contractor.[1] The Court has before it defendant's Motion to Dismiss on Eleventh Amendment grounds (docket No. 4) filed on July 15, 1992. On August 24, 1992, plaintiff filed an Opposition to defendant's Motion to Dismiss (docket No. 7). A document titled Supplemental Authorities to Opposition to Motion to Dismiss (docket No. 10) was filed by the plaintiff on September 11, 1992. For the reasons set forth below, the Motion to Dismiss is hereby GRANTED.

## I. Background

PRMSA, which is also known as "Autoridad de las Navieras", is a government agency created by the Puerto Rico legislature on June 10, 1974. 23 L.P.R.A. § 3051. It was created as a nonstock corporation by the legislature of the Commonwealth of Puerto Rico (hereinafter the "Commonwealth") to insure "that the citizens of the Commonwealth" have an adequate and inexpensive supply of basic commodities, and to foster the development and expansion of trade and industry." 23 L.P.R.A. § 3054. PRMSA was created "... for the benefit of the people of the Commonwealth and for the protection of their health and welfare." PRMSA operates as a maritime transportation system for cargo and passengers between Puerto Rico and abroad and is run by a seven-member governing board. 23 L.P.R.A. § 3054. All board members are appointed by the Governor of the Commonwealth and serve four year terms. *Id.* The governing board appoints an executive director, a secretary and such officers as it deems necessary. *Id.* PRSMA's powers include, but are not limited, to the following: (1) PRMSA may sue and be sued, (2) PRMSA has complete control and supervision of all undertakings acquired or constructed by PRMSA, or by any company in which the PRMSA may acquire stock,[2] (3) PRMSA may enter into contracts and other arrangements with any natural or legal person, who is a citizen of the United States, for the management of operations of any or all the undertakings subject to the control of PRMSA or for consulting or advisory services related to the operation of such undertakings, (4) PRMSA has the power to determine, fix, impose, charge, alter and collect reasonable rates, fees and charges and other service terms and conditions for the use of any undertakings or the services rendered thereby,[3] (5) PRMSA has the power to acquire any property or interest therein in

---

1. The contract appointed plaintiff demurrage billing and collection contractor for demurrage on inbound cargoes and equipment for PRMSA. The contract also appointed plaintiff inspector and monitor of any equipment pools within the Commonwealth of Puerto Rico.

2. An "undertaking" is defined by Title 23, Section 3053 as:

> any property or properties, whether real or personal, owned, operated, managed, controlled or used by [PRMSA], within or without the geographical boundaries of the Commonwealth, or intended to be so owned, operated, managed, controlled or used by it in connection with any of its activities, including but without limitation any system or systems, ships, offices, equipment, supplies, fuel energies, services, facilities, structures, plants, vehicles, and rolling stock, together with all parts and appurtenances thereof, that are or may be used, useful or convenient to carry out any of the activities or services usually performed by public carriers and shipping enterprises devoted to the transportation of persons or cargo or in activities or services auxiliary or supplemental thereto.

The definition of "undertaking" also includes all marine terminal facilities. *See* 23 L.P.R.A. § 3053.

3. Title 23, Section 3055, provides that the fees and charges established by PRMSA must be, at all times, at least sufficient to:

> (i) pay the expenses of [PRMSA] in connection with the repair, maintenance and operation of its undertakings, (ii) pay when due the principal of and interest on any outstanding indebtedness, the dividends, and amortization requirements of preferred stock of any company acquired by [PRMSA] through the acquisition of the common stock thereof, (iii) pay when due the principal of and interest on bonds issued by [PRMSA] or the payment thereof assumed by it, and to fulfill the terms and provisions of such covenants as may be entered into with or for the benefit of the purchase or holders of such bonds, and (iv) provide reserves for the foregoing purposes.

Title 23, Section 3057, provides that the fixing of the rates shall not be subject to control or approval by any department division, commission, board, body, bureau, of agency of the Commonwealth.

any lawful manner including, but without limitation, the acquisition by purchase, whether by agreement or by exercising the power of eminent domain, (6) PRMSA may borrow money for any of its corporate purposes and to issue bonds in evidence of such indebtedness, and to secure the payment of such bonds and the interest thereon by pledge of, or other lien on any or all of its undertakings and the revenues derived therefrom, (7) PRMSA has the power to issue bonds for the purposes of finance, refinance, purchase, or to redeem any of its outstanding bonds, (8) PRMSA has the power to enter into lands, bodies of water or premises, after notice to the owners of occupants thereof, in order to make examinations, soundings or surveys. 23 L.P.R.A. § 3055.

PRMSA has no authority to pledge the credit of the Commonwealth; however, the Commonwealth guarantees the payment of the principal of and interest on bonds issued by PRMSA, in an aggregate principal amount not exceeding sixty million dollars ($60,000,000).[4] 23 L.P.R.A. § 3068. On July 21, 1988, the Puerto Rico legislature enacted a Joint Resolution allocating sixty million dollars ($60,000,000) to PRMSA for the fiscal years of 1988–1989 through 1993–1994 "to continue the due capitalization of [PRMSA] this public instrumentality in order to guarantee the functional and economic stability in its operations ..." S.J.R. 156 of July 21, 1988. Another Joint Resolution enacted on

the same day recognized and expressed concern for the agency's millionaire deficit[5] and authorized the Secretary of the Treasury to convert a fifteen million dollar ($15,000,000) loan, advanced by the Secretary of the Treasury to PRMSA in 1980, into a capital contribution. S.J.R. 161 of July 21, 1988.

PRMSA is required to submit to the legislature and to the Governor of Puerto Rico, prior to the end of each calendar year, a financial statement and complete report of its business for the preceding fiscal year. 23 L.P.R.A. § 3073. At the close of its fiscal year, PRMSA is required to pay over to the Commonwealth Treasury its total net income, if any, after establishing adequate reserves for the uninterrupted modernization and improvement of service achieved during such fiscal year. 23 L.P.R.A. § 3072.

The parties entered into the contract for the billing and collection of demurrage charges and inspection of equipment pools on October 24, 1991.[6] Plaintiff filed the present action on May 29, 1992. On July 15, 1992, the defendant filed its motion to dismiss on the grounds that PRMSA is entitled to immunity from suit in federal court pursuant to the Eleventh Amendment to the United States Constitution and, in addition, that plaintiff is precluded by a clause in the contract from filing any action arising out of the contract in controversy in federal court.[7]

---

4. Title 23, Section 3068, provides that:
   The bonds covered by such guaranty shall be those specified by a resolution of [PRMSA] and a statement of such guaranty shall be set forth on such bonds. The guaranty shall also apply, in addition, to any bonds issued by [PRMSA] to refinance bonds previously issued.... If at any time the rents, revenues, or any other available funds of [PRMSA] which are pledged to the payment of the principal of and interest on bonds directly guaranteed by the Commonwealth ... were not sufficient for the payment of such principal and interest at its maturity nor to maintain a reserve for such purpose, as provided in the trust agreement securing those bonds, the Secretary of the Treasury shall withdraw from the redemption Fund established by sections 402–404 of Title 13, or from any available funds in the Treasury of Puerto Rico, such sums as may be necessary to cover the deficiencies in the amount required for the payment of such principal and interest and to maintain such reserve, and shall direct that the sums so withdrawn be applied to such pur-

poses. The good faith and credit of the Commonwealth of Puerto Rico are hereby pledged to such payments.

5. In June 1985 PRMSA's deficit reached the figure of $198,218,000.00. This operating deficit was reduced, according to the resolution, to $175,210.00 as a result of two contributions of capital totalling the sum of $23,000,000.00 and which were approved by the Legislature of Puerto Rico in 1984 and 1985.

6. In Puerto Rico, demurrage is a reparation charge to compensate for the time a container or trailer is used beyond a stated period of time. After the defined time has expired, the shipper is liable for the delay at a rate of demurrage stipulated in the tariff.

7. The relevant clause in the contract provides that any action arising out of the contract will be maintained in "any court of general jurisdiction;" defendant argues that through this lan-

Plaintiff opposes the motion alleging that PRMSA is not entitled to immunity.

## II. Discussion

### A. Eleventh Amendment Immunity

■ The Eleventh Amendment acts as a jurisdictional bar, and defense, to all suits claiming money damages brought in a federal court against a state, including Puerto Rico, without its consent. *Metcalf & Eddy v. Puerto Rico Aqueduct & Sewer*, 945 F.2d 10, 11 (1st Cir.1991); *Accord In re San Juan Dupont Plaza Hotel Fire Litigation*, 888 F.2d 940, 942 (1st Cir.1989); ("The Commonwealth of Puerto Rico is treated as a state for Eleventh Amendment purposes."); see *Ramírez v. Puerto Rico Fire Service*, 715 F.2d 694, 697 (1st Cir.1983); *Fernández v. Chardón*, 681 F.2d 42, 59 n. 13 (1st Cir.1982), aff'd, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983).[8]

■ The Eleventh Amendment may also apply in cases involving diverse governmental entities, including cities, counties, state agencies, multi-state agencies, governors, officers and schools. 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3524 (Civil 2d ed.) (1984).

■ In order for the Eleventh Amendment to apply as a jurisdictional bar in an action against a state agency or entity, the Court must determine whether the entity is to be treated as " 'an arm [or alter ego] of the State partaking of the State's Eleventh Amendment immunity or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend.' " *Rodríguez–García v. Dávila*, 904 F.2d 90, 98–99 (1st Cir.1990); *Ainsworth Aristocrat Int'l Party, Ltd. v. Tourism Co. of Puerto Rico*, 818 F.2d 1034, 1036 (1st Cir.1987) (quoting *Mount. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977)). The Court in *Rodríguez–García* held that in determining whether the agency is entitled to the immunity, the Court should review and decide:

'whether [the entity] performs a governmental function, whether it functions with substantial autonomy, to what extent it is financed independently of the state treasury, and if a judgment sought to be entered against the [entity] will be satisfied out of the state treasury.' *Culebras Enterprises Corp. v. Rivera Ríos*, 813 F.2d 506, 517 (1st Cir.1987). Other factors relevant to the Eleventh Amendment inquiry include whether the entity 'has been incorporated; . . . whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the [entity's] operations'.

guage plaintiff agreed to submit any action arising out of the contract to the courts of the Commonwealth as federal courts are courts of limited jurisdiction.

**8.** The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. One commentator has noted that "[t]he first lesson to be learned about the Eleventh Amendment is that it does not mean only what it literally says: it also means something more and something less." 2 J. Cook & J. Sobieski, *Civil Rights Actions* 2–4 Sec. 2.01 (Bender 1991). By its own terms, the amendment prohibits suits in federal court brought against a state by citizens of another state or citizens of a foreign country. The amendment has been construed by the courts as also barring suits in federal court against a state brought by its own citizens (*Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)), by a foreign country (*Principality of Monaco v. Mississippi*, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934)), by a municipal authority (*accord Municipal Authority of Town of Bloomsburg v. Commonwealth Dept. of Environmental Resources*, 496 F.Supp. 686 (D.C.Pa. 1980)), and by an Indian tribe (*accord Standing Rock Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135 (8th Cir.1974)). The Court has also extended the scope the amendment to include suits in admiralty. *Ex parte New York*, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).

An Eleventh Amendment issue is one of jurisdiction. *Accord Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).

*Rodríguez–García v. Dávila,* 904 F.2d 90, 98 and 99 (1st Cir.1990). *Ainsworth* added that still another factor to be considered is 'local law and decisions defining the status and nature of the agency involved in its relation to the sovereign'. *Ainsworth Aristocrat Int'l Party, Ltd. v. Tourism Co. of Puerto Rico,* 818 F.2d 1034, 1037 (1st Cir.1987). These factors should not be applied mechanically but should instead be used to assist the Court in assessing whether the defendant *"acted more like a private company, or more like the Commonwealth's government, in conducting the activities relevant to this ... suit."* *Royal Caribbean Corp. and Caribbean Cruise Line, Ltd. v. Puerto Rico Ports Authority,* 973 F.2d 8, 10 (1st Cir.1992) (citing *Puerto Rico Ports Auth. v. M/V MANHATTAN PRINCE,* 897 F.2d 1, 10 (1st Cir. 1990); *Jacintoport v. Greater Baton Rouge Port Commission,* 762 F.2d 435, 442 (5th Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986)).

The Courts of this District have on many occasions held that the protections of the Eleventh Amendment extend to various agencies or instrumentalities of the Commonwealth that act as arms of the Commonwealth.[9] On other occasions we have held that its protections do not extend to various agencies and instrumentalities of the Commonwealth.[10] We have not had the opportunity in this district to consider whether the protections of the Eleventh Amendment extend to PRMSA. In *Zapata Gulf Marine v. Puerto Rico Maritime Shipping Authority,* 682 F.Supp. 1345 (E.D.La.1988), a district court in Louisiana held that PRMSA was entitled to assert Eleventh Amendment immunity in an antitrust action brought against it. However, a prior pronouncement of an agency or instrumentality's entitlement to Eleventh Amendment immunity, as the one made by the court in *Zapata,* is not necessarily determinative since the Court must consider each claim of sovereign immunity in the context of the particular claim brought by the plaintiff.[11]

■ Although many factors must be weighed in determining whether an instrumentality is entitled to Eleventh Amendment immunity, two factors predominate. First, whether the funds to satisfy a potential adverse judgment will be drawn from the public treasury or from the independent funds of the agency; and second, whether the agency

---

9. *See, e.g., Pérez v. Rodríguez Bou,* 575 F.2d 21 (1st Cir.1978) (University of Puerto Rico immune from suits in federal court); *In re San Juan Dupont Plaza Fire Litigation,* 888 F.2d 940, 943–44 (1st Cir.1989) (Puerto Rico Tourism Company immune where the Commonwealth supplied 70–75 percent of its funds; statutory provision that Commonwealth not liable for its debts insufficient to outweigh other factors); *Rodríguez Díaz v. Sierra Martínez,* 717 F.Supp. 27, 29–31 (D.Puerto Rico 1989) (Pieras, J.) (Puerto Rico Medical Services Administration immune from malpractice suit in federal court since it provides a governmental function in administering medical complex and judgment would be paid at least in part out of Commonwealth treasury); *New Progressive Party v. Hernández Colón,* 779 F.Supp. 646, 652 (D.Puerto Rico 1991) (Puerto Rico Elections Commission immune from suit in federal court); *Avilés Martínez v. Jiminez Monroig,* 764 F.Supp. 240 (D.Puerto Rico 1991) (Pieras, J.), *aff'd in part and rev'd in part,* 963 F.2d 2 (1st Cir.1992) (Puerto Rico Automobile Accident Compensation Administration immune from suit for monetary damages); *Martínez v. Junta de Planificación de Puerto Rico,* 736 F.Supp. 413, 422 (D.Puerto Rico 1990) (Puerto Rico Planning Board and Culebra Conservation and Development District immune from action for damages); *Villegas Dávila v. Pascual,* 631 F.Supp. 919 (D.Puerto Rico 1986) (Compañía de Fomento Recreativo is an arm of the state entitled to immunity).

10. *See, e.g., Riefkohl v. Alvarado,* 749 F.Supp. 374 (D.Puerto Rico 1990) (Puerto Rico Electrical Power Authority not immune in suit for damages because it is *fiscally autonomous and holds the power to administer its own affairs* ); *Laborde García v. Puerto Rico Telephone Co.,* 734 F.Supp. 46, 47 (D.Puerto Rico 1990) (commenting that defendant has consistently been denied Eleventh Amendment Immunity).

11. *Compare Royal Caribbean Corp. and Caribbean Cruise Line, Ltd. v. Puerto Rico Ports Authority,* 973 F.2d 8, 10 (1st Cir.1992) (Puerto Rico Ports Authority *not immune* in suit claiming negligent maintenance of pier where Authority "sold" docking facilities) *with Puerto Rico Ports Authority v. M/V MANHATTAN PRINCE,* 897 F.2d 1, 10 (1st Cir.1990) (Ports Authority *immune* in suit claiming negligence by an Authority-licensed harbor pilot where Authority did not "sell" pilot service); *see also Jacintoport v. Greater Baton Rouge Port Commission,* 762 F.2d 435, 442 (5th Cir.1985) (reasons for immunity are stronger where plaintiff's claim implicates public policy or public affairs).

exercises a traditional governmental function as opposed to a proprietary function. *See Arroyo Otero v. Hernández Purcell,* 804 F.Supp. 418 (D.Puerto Rico 1992).

■ The application of the *Ainsworth* factors to this case establishes that PRMSA, in entering into contracts for the performance of the billing and collection of its demurrage charges and the inspection of its equipment pools, is an arm of the Commonwealth which partakes of the Commonwealth's Eleventh Amendment immunity. First, given PRMSA's financial dependence on the Commonwealth, the funds to satisfy a potential adverse judgement in this case would have to be drawn from the public treasury. Although PRMSA is authorized by statute to raise its own funds by issuance of bonds, the Commonwealth serves as the agency's guarantor for the payment of principle and interest of those bonds issued. PRMSA has presented evidence showing that since 1984 the Commonwealth has provided PRMSA with at least ninety-eight million dollars ($98,000,000) to insure PRMSA's continuing operation.[12] The Court in *Zapata* recognized, by giving credit to an audited financial statement performed by Deloitte, Haskins, & Sells for 1983–1984, that PRMSA has been financially dependent on the Commonwealth since its creation and that such dependency would continue in the future:

> Since its inception [PRMSA] has not been provided equity capital, and has been primarily dependent upon government support through direct loans and loans guarantees [sic] to finance its operations. Such continued support will be necessary in the future to ensure the continuity of operations of [PRMSA].

> *Zapata,* 682 F.Supp. at 1353.

Thus, it cannot be disputed that PRMSA's is financially dependent on the Common-

wealth. Furthermore, the fact that PRMSA is obligated by statute to return, at the end of every fiscal year, any and all profits gained during that year to the Treasury of the Commonwealth[13] supports a conclusion that the legislature of the Commonwealth never intended for PRMSA's finances to be completely separate from those of the Commonwealth. In addition, PRMSA is required to submit annual reports on the financial status of the agency for the preceding fiscal year. This report is to be submitted to the Governor and the legislature of Puerto Rico. 23 L.P.R.A. § 3073.

Second, PRMSA performs a vital governmental function. PRMSA was created to facilitate maritime transportation of cargo and passengers to and from Puerto Rico. 23 L.P.R.A. § 3051, *et seq.* PRMSA performs functions that the legislature finds "essential to the economic growth of the Commonwealth, and to the full employment and prosperity of its citizens ..." 1974 L.P.R. p. 255 (statement of motives); *see also* 23 L.P.R.A. § 3052. Thus, PRMSA performs an important role in the formulation and implementation of the Commonwealth's public policy regarding the economic growth of Puerto Rico. In addition, the Supreme Court of Puerto Rico has recognized PRMSA's public function. In *McCrillis v. Autoridad de las Navieras de Puerto Rico,* 89 J.T.S. 6, the Supreme Court of Puerto Rico acknowledged that PRMSA provides maritime transportation as a public service and that PRMSA was created to resolve the state of impairment of the then existing service.

Plaintiff argues that in entering into contract for the performance of the billing and collection of demurrage charges and the inspection of equipment pools PRMSA is performing activities that are not alien to a proprietary function. However, plaintiff

---

12. The Ninety-eight million dollar ($98,000,000) figure includes the sixty million (60,000,000) dollars allocated by joint resolution on July 21, 1988, the fifteen million dollar ($15,000,000) loan which the Commonwealth forgave PRMSA by joint resolution on July 21, 1988, and twenty-three million dollars ($23,000,000) dollars allocated by the Commonwealth to PRMSA as a capital contribution in the years of 1984 and 1985.

13. The statute makes an exception: PRMSA may keep quantities which may be needed for the improvement and maintenance of the service provided by the agency. The statute also states that in case a dissolution of the agency, all of PRMSA's assets shall pass to the Commonwealth's Treasury. These will then be distributed by the government to the municipalities. *See* 23 L.P.R.A. § 3072.

does not develop its argument or provide any evidence supporting its contention. It is not clear that in entering into a contract for the performance of the billing and collection of demurrage charges PRMSA is exercising a proprietary function. Moreover, the Court believes that in contracting for the inspection of equipment pools PRMSA is performing a governmental regulatory function. Most important, the Court agrees with the court's finding in *Zapata* that, "[a]lthough PRMSA performs functions which are traditionally performed by private parties, its creation and operation was necessitated by the inability of the private sector to meet the public's need." *Zapata*, 682 F.Supp. at 1351. Thus, the Court finds that in performing the activities which gave rise to this action PRMSA was performing a governmental function as opposed to a proprietary function.

Other factors also militate in favor of Eleventh Amendment immunity. It is significant that all of PRMSA's board members, who exercise all the powers delegated to PRMSA, are appointed by the governor. In *Pérez v. Rodríguez Bou*, 575 F.2d 21 (1st Cir.1978), the court held that the University of Puerto Rico was entitled to Eleventh Amendment immunity because the Commonwealth's financial support to the University of Puerto Rico, added to the fact that the members of the governing board of the university were appointed by the governor, rendered the university not sufficiently autonomous. The same is true in this case: PRMSA is financially dependent on the Commonwealth and all its board members are appointed by the governor.

The fact that PRMSA has the express authority to sue and be sued in its own name and the right to hold and use property weight against a finding of immunity. However, the fact that PRMSA, like the University of Puerto Rico, is a corporation of the Commonwealth, empowered by statute to sue and be sued [14], to issue bonds, and to enter into contracts, is not inconsistent with a finding that PRMSA is sufficiently an "arm" of the Commonwealth. In *Culebras Enterprises Corp. v. Rivera Ríos*, 813 F.2d 506 (1st Cir.1987), the court held that although the Culebra Conservation and Development Authority could, like PRMSA, be sued and be sued, raise its own funds, and control its own properties, it was still an "arm" of the Commonwealth for Eleventh Amendment purposes.[15]

Overall, the factors militating towards immunity predominate over those factors weighing against immunity. Therefore, because the application of the factors in this case indicate that PRMSA is an entity which is financially dependent on the Commonwealth, performs a vital governmental function, and does not enjoy a significant amount of autonomy, the Court finds that PRMSA is entitled to Eleventh Amendment immunity. Thus, PRMSA's motion to dismiss is hereby **GRANTED.**

IT IS SO ORDERED.

---

**14.** Although Navieras enabling Act provides it with the power to sue and be sued, this does not constitute an Eleventh Amendment waiver; in order for a statute to effect a waiver it must specify the state's intention to be sued in federal court. *Huang v. Board of Governors of University of North Carolina*, 902 F.2d 1134, 1138 and 1139 (4th Cir.1990) (quoting *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985)). The phrase "to sue and be sued" was intended to give agencies the power to be sued or sue in their own names in local courts, rather than to constitute a waiver at the agency's Eleventh Amendment immunity. "To sue and be sued" is not the textual intent to waive immunity required by this Court nor the

Supreme Court. The intent to abrogate immunity must be both unequivocal and textual. *Lipsett v. University of Puerto Rico*, 745 F.Supp. 793 (D.Puerto Rico 1990); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985); *Pennhurst State School & Hospital*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67; *Quern v. Jordan*, 440 U.S. 332, 342, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

**15.** Like the Culebra Conservation and Development Authority, PRMSA's property is tax-exempted.