TRANS AMERICAN RECOVERY
SERVICES, INC., Plaintiff,

v.

PUERTO RICO MARITIME SHIPPING
AUTHORITY, Defendant.

Civ. No. 92–1733 (JP).

United States District Court,
D. Puerto Rico.

April 26, 1994.

Ramonita Pérez de Gotay, Feldstein, Gelpí, Hernández & Gotay, Old San Juan, P.R., for plaintiff.

Juan A. Moldes Rodríguez, Saldaña, Rey & Alvarado, Santurce, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

On April 19, 1993, the Court issued an Opinion and Order (docket No. 13) granting Puerto Rico Maritime Shipping Authority's (hereinafter "PRMSA") motion to dismiss on Eleventh Amendment grounds. On May 7, 1993, Trans American Recovery Services, Inc. ("TARS") filed a timely Motion to Alter or Amend Judgment (docket No. 15). On May 18, 1993, TARS filed a motion submitting supplemental authorities to the motion to alter or amend (docket No. 16). On June 7, 1993, the Court granted PRMSA's motion for an extension to oppose TARS's motion to alter or amend (docket 18). PRMSA filed its opposition on June 8, 1993 (docket No. 19).[1] Under Local Rule 311.7 and Rule 6(a) and (e) of the Federal Rules of Civil Procedure, TARS could have sought leave from the Court to file a reply to PRMSA's opposition; however, on June 14, 1993, TARS filed an informative motion (docket No. 20) informing the Court that it had determined that PRMSA's motion did not merit a reply. For the reasons set forth below, TARS motion to Alter or Amend the Judgment is hereby **GRANTED** and the Judgement is hereby amended to reflect the Court's decision. As the Court finds that PRMSA is not entitled to Eleventh Amendment immunity from suit, PRMSA's Motion to Dismiss, filed on July 15, 1992, is hereby **DENIED** and the Judg-

ment of the Court entered on April 22, 1993, is left without effect.

■ Also pending before the Court are the parties' motions requesting the Court to accept information to supplement the parties' motion to dismiss and opposition to motion to dismiss. On June 30, 1993, PRMSA filed a motion entitled "Motion to Supplement Defendant's Reply"[2] (docket No. 21) which asks the Court to take judicial notice of Executive Order OE–1993–25, promulgated on June 16, 1993. On July 7, 1993, TARS opposed PRMSA's request through a motion entitled "Request to be Heard on Taking of Judicial Notice of Executive Order" (docket No. 23). The Court cannot take judicial notice of the Executive Order in order to establish adjudicative facts of statements made by the governor of the Commonwealth of Puerto Rico and contained in the executive order regarding the financial condition of PRMSA. These statements are neither capable of "accurate" or "ready" determination by resort to sources whose accuracy cannot reasonably be questioned. See Fed.R.Evid. 201(b). Therefore, PRMSA's "Motion to Supplement Defendant's Reply" is hereby **DENIED** except to the extent that the Court hereby takes judicial notice of the fact that the Governor of the Commonwealth of Puerto Rico has officially recommended that steps be taken to effectuate the sale of PRMSA. Finally, on July 19, 1993, TARS filed a motion entitled "Motion Submitting Letter Showing Profitability of PRMSA" (docket No. 24) asking the Court to consider certain statements pertaining to PRMSA's profitability contained in a Government Development Bank of Puerto Rico's letter.[3] No opposition has been filed by PRMSA. TARS's motion asking the Court to consider certain statements pertaining to PRMSA's profitability is hereby DENIED because even if the statements made by the Government Development Bank could be considered the statements of PRMSA under a theory of agency, it does not necessari-

---

**1.** PRMSA mistakenly labeled its motion a "reply," however, PRMSA's motion opposing TARS motion to alter or amend is an "opposition."

**2.** Again, PRMSA mistakenly labeled its motion a "reply", when it should correctly be labeled an "opposition".

**3.** The letter seeks to interest prospective buyers in the purchase of PRMSA from the government.

ly follow that PRMSA is "bound" by these statements. Plaintiff has failed to sufficiently develop a theory under which its motion asking the Court to consider certain statements pertaining to PRMSA's profitability can be granted.

## I. Background

TARS filed this action seeking to recover damages suffered as the result of PRMSA's alleged unjustified cancellation of a contract (hereinafter the "contract") which appointed plaintiff PRMSA's demurrage billing and collection contractor. Puerto Rico Maritime Shipping Authority, which is also known as "Autoridad de las Navieras", is a government agency created by the Puerto Rico legislature on June 10, 1974. 23 L.P.R.A. § 3051. It was created as a nonstock corporation by the legislature of the Commonwealth of Puerto Rico (the "Commonwealth") to insure "that the citizens of the Commonwealth of Puerto Rico have an adequate and inexpensive supply of basic commodities, and to foster the development and expansion of trade and industry." 23 L.P.R.A. § 3054. PRMSA was created "... for the benefit of the people of the Commonwealth and for the protection of their health and welfare." PRMSA operates as a maritime transportation system for cargo and passengers and is run by a seven-member governing board. 23 L.P.R.A. § 3054. All board members are appointed by the Governor of the Commonwealth and serve four year terms. *Id.* The governing board appoints an executive director, a secretary, and such officers as it deems necessary. *Id.* PRMSA's powers include, but are not limited, to the following: (1) PRMSA may sue and be sued, (2) PRMSA has complete control and supervision or all undertakings acquired or constructed by PRMSA, or by any company in which the PRMSA may acquire stock,[4] (3) PRMSA may enter into contracts and other arrangements with any natural or legal person, who is a citizen of the United States, for the management of operations of any or all the undertakings subject to the control of PRMSA or for consulting or advisory services related to the operation of such undertakings, (4) PRMSA has the power to determine, fix, impose, charge, alter and collect reasonable rates, fees and charges and other service terms and conditions for the use of any undertakings or the services rendered thereby,[5] (5) PRMSA has the power to acquire any property or interest therein in any lawful manner including, but without limitation, the acquisition by purchase, whether by agreement or by exercising the power of eminent domain, (6) PRMSA may borrow money for any of its corporate purposes and to issue bonds in evidence of such indebtedness, and to secure the payment of such bonds and the interest thereon by pledge of,

---

4. An "undertaking" is defined by Title 23, Section 3053 as:

> any property or properties, whether real or personal, owned, operated, managed, controlled or used by [PRMSA], within or without the geographical boundaries of the Commonwealth, or intended to be so owned, operated, managed, controlled or used by it in connection with any of its activities, including but without limitation any system or systems, ships, offices, equipment, supplies, fuel energies, services, facilities, structures, plants, vehicles, and rolling stock, together with all parts and appurtenances thereof, that are or may be used, useful or convenient to carry out any of the activities or services usually performed by public carriers and shipping enterprises devoted to the transportation of persons or cargo or in activities or services auxiliary or supplemental thereto.

The definition of "undertaking" also includes all marine terminal facilities. *See* 13 L.A.P.R.A. § 3053.

5. Title 23, Section 3055, provides that the fees and charges established by PRMSA must be, at all times, at least sufficient to:

> (i) pay the expenses of [PRMSA] in connection with the repair, maintenance and operation of its undertakings, (ii) pay when due the principal of and interest on any outstanding indebtedness, the dividends, and amortization requirements of preferred stock of any company acquired by [PRMSA] through the acquisition of the common stock thereof, (iii) pay when due the principal of and interest on bonds issued by [PRMSA] or the payment thereof assumed by it, and to fulfill the terms and provisions of such covenants as may be entered into with or for the benefit of the purchase or holders of such bonds, and (iv) provide reserves for the foregoing purposes.

Title 23, Section 3057, provides that the fixing of the rates shall not be subject to control or approval by any department, division, commission, board, body, bureau, of agency of the Commonwealth.

or other lien on any or all of its undertakings and the revenues derived therefrom, (7) PRMSA has the power to issue bonds for the purposes of finance, refinance, purchase, or to redeem any of its outstanding bonds, (8) PRMSA has the power to enter into lands, bodies of water or premises, after notice to the owners of occupants thereof, in order to make examinations, soundings or surveys. 23 L.P.R.A. § 3055. PRMSA has no authority to pledge the credit of the Commonwealth; however, the Commonwealth guarantees the payment of the principal of and interest on bonds issued by PRMSA, in an aggregate principal amount not exceeding sixty million dollars ($60,000,000).[6] 23 L.P.R.A. § 3068. On July 21, 1988, the Puerto Rico legislature enacted a Joint Resolution allocating sixty million dollars ($60,000,000) to PRMSA for the fiscal years of 1988–1989 through 1993–1994 "to continue the due capitalization of [PRMSA] in order to guarantee the functional and economic stability in its operations ..." S.J.R. 156 of July 21, 1988. Another Joint Resolution enacted on the same day recognized and expressed concern for the agency's millionaire deficit[7] and authorized the Secretary of the Treasury to convert a fifteen million dollar ($15,000,000) loan, advanced by the Secretary of the Treasury to PRMSA in 1980, into a capital contribution. S.J.R. 161 of July 21, 1988. PRMSA is required to submit to the legislature and to the Governor of Puerto Rico, prior to the end of each calendar year, a financial statement and complete report of its business for the preceding fiscal year. 23 L.P.R.A. § 3073. At the close of its fiscal year, PRMSA is re-quired to pay over to the Commonwealth Treasury its total net income, if any, after establishing adequate reserves for the uninterrupted modernization and improvement of service achieved during such fiscal year. 23 L.A.P.R.A. § 3072.

In our Opinion and Order entered on April 19, 1993, we held that PRMSA was entitled to Eleventh Amendment immunity from suit as we concluded that because PRMSA is financially dependent on the Commonwealth, the funds to satisfy a potential adverse judgment against PRMSA would inevitably be drawn from the public treasury. *Trans Am. Recovery Services v. Puerto Rico Maritime Shipping,* 820 F.Supp. 38, 43 (Dist. of Puerto Rico 1993). Furthermore, we concluded that PRMSA was entitled to immunity as it appeared from the parties' briefs that in contracting for the inspection of equipment pools PRMSA was performing a traditional governmental function. *Id.* Also significant to our finding of immunity was the fact that all of PRMSA's board members are appointed by the governor of the Commonwealth. P.R. Laws Ann.Tit. § 3054. However, we also recognized the presence of factors which weighed against immunity. For example, we acknowledged that the fact that PRMSA has express authority to sue and be sued in its own name, the right to use and hold property and the power to raise its own funds by charging user fees and issuing bonds weighed against a finding of immunity. P.R.Laws Ann.Tit. § 3055. Nevertheless, after assessing the balance of factors weighing in favor and against immunity we reasoned, in conformance with our earlier pronounce-

6. Title 23, Section 3068, provides that:
   The bonds covered by such guarantee shall be those specified by a resolution of [PRMSA] and a statement of such guaranty shall be set forth on such bonds. The guaranty shall also apply, in addition, to any bonds issued by [PRMSA] to refinance bonds previously issued.... If at any time the rents, revenues, or any other available funds of [PRMSA] which are pledged to the payment of the principal of and interest on bonds directly guaranteed by the Commonwealth ... were not sufficient for the payment of such principal and interest at its maturity nor to maintain a reserve for such purpose, as provided in the trust agreement securing those bonds, the Secretary of the Treasury shall withdraw from the redemption Fund established by sections 402–404 of Title 13, or from any available funds in the Treasury of Puerto Rico, such sums as may be necessary to cover the deficiencies in the amount required for the payment of such principal and interest and to maintain such reserve, and shall direct that the sums so withdrawn be applied to such purposes. The good faith and credit of the Commonwealth of Puerto Rico are hereby pledged to such payments.

7. In June 1985 PRMSA's deficit reached the figure of $198,218,000.00. This operating deficit was reduced, according to the resolution, to $175,210.00 as a result of two contributions of capital totalling the sum of $23,000,000.00 and which were approved by the Legislature of Puerto Rico in 1984 and 1985.

ments regarding the hierarchy of the factors to be considered in determining whether an agency is entitled to immunity,[8] that the factors weighing in favor of immunity controlled and settled the question.

## II. Standard to Alter or Amend Judgment

■ Rule 59(e) is the appropriate procedural device to challenge the legal correctness of a decision of a district court. *United States v. Belanger*, 598 F.Supp. 598, 601 (D.Me.1984). *See also Feinstein v. Moses*, 951 F.2d 16, 19 n. 3 (1st Cir.1991) (a petition to set aside the judgment of dismissal as legally erroneous is properly treated as a motion brought under Rule 59(e)). Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, the Court may alter or amend a judgment entered as long as the motion to alter or amend is served no later than ten days after the entry of judgment.

■ The district court has substantial discretion to grant or deny a motion brought under Rule 59(e). *See United States v. Parcel of Land*, 896 F.2d 605, 611 (1st Cir.1990). "Rule 59(e) motions are aimed at *re* consideration, not initial consideration." *Harley–Davidson Motor Co. v. Bank of New England*, 897 F.2d 611, 616 (1st Cir.1990) (*citing to White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982)). "Parties normally cannot use [Rule 59(e) and 60(b) motions] to raise arguments which could, and should, have been made before the judgment issued." *Harley–Davidson* 897 F.2d at 616 (*quoting FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986). *See also Appeal of Sun Pipe Line Co.*, 831 F.2d 22, 25

(1st Cir.1987) ("once the ball has ended, the district court has substantial discretion in deciding whether to strike up the band again in order to allow the losing party to argue new material or a new theory"). Some courts recognize only three possible grounds for reconsideration: intervening change in controlling law, availability of new evidence not previously available, and need to prevent clear error of law or prevent manifest injustice. *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625 (S.D.Miss.1990).

## III. Discussion

### A. Eleventh Amendment Immunity

■ TARS urges the Court to reconsider its decision to grant dismissal of the action on Eleventh Amendment immunity grounds. TARS argues that the Court's conclusion that PRMSA is entitled to immunity is erroneous. The Court held that PRMSA was entitled to immunity because it is—and has since its creation been—financially dependent on the Commonwealth of Puerto Rico; moreover, the Puerto Rico Legislature considered its functions to be "vital." [9] TARS argues that the Court improperly concluded that the funds to satisfy a potential adverse judgment in this action would be drawn from the public treasury as PRMSA presented no evidence to clearly establish that payment of any judgment against it would in fact be drawn from the treasury of the Commonwealth. In effect, the Court based its conclusion on PRMSA's extreme financial dependence on the Commonwealth rather than on any evidence specifically showing that an adverse judgment against PRMSA would indeed be satisfied from the Commonwealth's coffers.[10] In addition, TARS maintains that

8. In *Arroyo Otero v. Hernández Purcell*, 804 F.Supp. 418, 425 (Dist. of Puerto Rico 1992), the Court held that although many factors must be weighed in determining whether an instrumentality would be entitled to Eleventh Amendment immunity, two factors predominated: (1) whether the funds to satisfy a potential adverse judgment would be drawn from the public treasury of from the independent funds of the agency; and (2) whether the agency exercises a traditional governmental function as opposed to a proprietary function.

9. In deciding that PRMSA shared the Commonwealth of Puerto Rico's Eleventh Amendment

immunity the Court also considered other factors; however, as stated before, the Court gave the most significant weight to two factors. First, whether the funds to satisfy a potential adverse judgment would be drawn from the public treasury or from the independent funds of the agency; and second, whether the agency exercises a traditional governmental function as opposed to a proprietary function. *See Arroyo Otero v. Hernández Purcell*, 804 F.Supp. at 423.

10. PRMSA presented evidence that from 1984 to 1988 the Commonwealth provided PRMSA with at least ninety-eight million dollars ($98,000,-

its claims arise from proprietary functions performed by PRMSA rather than from the performance of a governmental function as the Court concluded. In determining that PRMSA was performing a traditional governmental function rather than a proprietary function the Court stated:

It is not clear that in entering into a contract for the performance of the billing and collection of demurrage charges PRMSA is exercising a proprietary function. Moreover, the Court believes that in contracting for the inspection of equipment pools PRMSA is performing a governmental regulatory function. Most important, the Court agrees with the court's finding in *Zapata* that, "[a]lthough PRMSA performs functions which are traditionally performed by private parties, its creation and operation was necessitated by the inability of the private sector to meet the public's need." *Zapata [Gulf Marine Corp. v. Puerto Rico Maritime Shipping,]* 682 F.Supp. [1345] at 1351 [ (E.D.La., 1988) ]. Thus, the Court finds that in performing the activities which gave rise to this action PRMSA was performing a governmental function as opposed to a proprietary function.

*Puerto Rico Maritime Shipping Authority,* 820 F.Supp. at 44.

After considering our Opinion and Order in light of the First Circuit opinion issued in *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Authority,* 991 F.2d 935 (1st Cir.1993), we find that we must grant TARS motion for reconsideration. In *Metcalf and Eddy,* the Circuit Court makes pellucidly clear that the principal factor in determining whether an agency "dwells within the Eleventh Amendment's shelter" is whether the funds to satisfy a potential adverse judgment against an agency of the state would be drawn from the public treasury. All other factors are secondary. In *Metcalf and Eddy,* the Circuit Court affirmed our decision to

deny the Puerto Rico Aqueduct and Sewer Authority ("PRASA") Eleventh Amendment immunity even though the Commonwealth provided PRASA with substantial financial support. PRASA argued that the financial support provided by the Commonwealth funds triggered Eleventh Amendment protection. The Circuit Court disagreed reasoning that,

[A]lthough the central government subsidizes the agency to some extent, PRASA relies mostly on user fees and bonds to support its operations. The government does not give PRASA a blank check or an indeterminant carte blanche allowing it to draw on the public treasury as it thinks necessary. Thus, control of the money flow from tax dollars is unilateral; if the Commonwealth chooses not to open the faucet, the agency must go thirsty or else, by resort to its own devices, procure the funds needed to stay liquid.

*Id.* at 941. Thus, financial support from the government, even if substantial, cannot be automatically taken to indicate that the funds to satisfy a potential adverse judgment against an agency of the state will be drawn from the public treasury. In the case *sub judice,* the Commonwealth not only provides substantial financial support to PRMSA, but also guarantees the payment of the principal of and interest on bonds issued by PRMSA, in an aggregate principal amount not exceeding sixty million dollars ($60,000,000). In addition, PRMSA is required to submit to the Legislature and to the Governor of Puerto Rico, prior to the end of each calendar year, a financial statement and complete report of its business for the preceding fiscal year and at the close of its fiscal year, is required to pay over to the Commonwealth Treasury its total net income. Nevertheless, the Court believes that PRMSA should have brought forth evidence, including sworn statements, clearly showing that the Com-

---

000.00) to insure the agency's continued operations. In addition, the Court considered the fact that the Commonwealth guarantees the payment of the principal of and interest on bonds issued by PRMSA, in an aggregate principal amount not exceeding sixty million dollars ($60,000,000.00); that PRMSA is required to submit to the Legislature and to the Governor of Puerto Rico, prior to

the end of each calendar year, a financial statement and complete report of its business for the preceding fiscal year; and that at the close of its fiscal year, PRMSA is required to pay over to the Commonwealth Treasury its total net income, if any, after establishing adequate reserves for the uninterrupted modernization and improvement of service achieved during such fiscal year.

monwealth has an obligation—by the operation of law or otherwise—to pay an adverse judgment in this case. PRMSA failed to bring forth any such evidence.

With respect to our finding that in entering into a contract for the performance of the billing and collection of demurrage charges and inspection of its equipment pools PRMSA performs a governmental function, TARS has brought forth evidence that proves our conclusion erroneous. TARS presented, annexed to its motion to alter or amend judgment, the unsworn declaration under penalty of perjury of Mr. Charles Rebagliati. Mr. Rebagliati's declaration explains in detail the nature of the services provided by TARS to PRMSA in the inspection of equipment pools. PRMSA contracted TARS to inspect its equipment pools as part of its billing of demurrage charges to shippers and consignees. Motion to Alter or Amend, Unsworn Declaration at ¶ 5 (docket No. 15). The inspection performed by TARS consists of examining containers in the equipment pool to determine if they are empty or full. *Id.* at ¶ 6. If a container which is inbound to Puerto Rico is in the equipment pool and is full, the consignee is charged demurrage after the time allowed to the consignee to unload and return the container to the equipment pool or to the common carrier's pier has expired. The same service could be provided by TARS to private corporations competing with PRMSA and operating as common carriers to and from Puerto Rico. *Id.* at ¶ 8. Thus, in light of this evidence, it is clear that PRMSA acted like a private company in conducting the activities relevant to this suit. PRMSA has not presented any evidence indicating that its activities related to this suit represent the exercise of a traditional governmental function rather than the exercise of a proprietary function. Therefore, the Court finds that PRMSA is not entitled to Eleventh Amendment immunity and **GRANTS** TARS' motion for reconsideration.

### B. Eleventh Amendment Waiver

■ TARS also argues that PRMSA waived its Eleventh Amendment immunity because Article 9 of the Contract entered into by the parties reads, in pertinent part, as follows: "[e]ach party irrevocably and unconditionally agrees that any suit, action or other legal proceeding arising out of this contract will be brought in any Court of general jurisdiction in the Commonwealth; . . ." TARS argues that this clause gives it the right to sue PRMSA in *any* court in Puerto Rico, including the United States District Court for the District of Puerto Rico. PRMSA disagrees with TARS' interpretation of the contract language and argues that the cited clause means exactly the opposite; that is, PRMSA argues that the parties stipulated that any suit arising out of the Contract would *not* be brought in federal court as federal courts are courts of "limited" jurisdiction.

■ The protections of the Eleventh Amendment do not apply in situations in which a state waives its immunity and consents to suit in federal court. Such a waiver may be effectuated by a state statute or constitutional provision or where a state otherwise waives its immunity to suit in the context of a particular federal program. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238 n. 1, 105 S.Ct. 3142, 3145 n. 1, 87 L.Ed.2d 171 (1985). Because the Court does not find that the PRMSA is an arm of the Commonwealth of Puerto Rico which enjoys Eleventh Amendment immunity, it is not necessary for the Court to consider the issue of waiver at this juncture; however, because we find the issue of waiver here presented relatively straightforward, we proceed to address it.

A state can be deemed to waive its Eleventh Amendment immunity "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). The Supreme Court has emphatically stated:

> The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one. Although a State's general waiver of sovereign immunity may subject it to suit in state court, it

is not enough to waive the immunity guaranteed by the Eleventh Amendment.... [A] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued. Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*

*Atascadero, supra,* 473 U.S. at 241, 105 S.Ct. at 3146–47 (citations omitted); *see also Hernández–Tirado v. Artau,* 874 F.2d 866, 873 (1st Cir.1989); *Marín–Piazza v. Aponte–Roque,* 873 F.2d 432, 436–37 (1st Cir.1989).

The language in the Contract which might arguably constitute a waiver of any immunity enjoyed by PRMSA is not of the "most express" type. Nor does the text of the Contract include such overwhelming implications that it leaves no room for any other reasonable construction. In fact, the language can easily be constructed to embody the parties intent that legal actions arising from the contract be brought in *any* court of Puerto Rico. Therefore, the Court **FINDS** that by the language found in the contract executed by the parties' PRMSA does not waive its Eleventh Amendment immunity if such immunity were enjoyed by PRMSA.

### IV. Conclusion

TARS motion for reconsideration is hereby **GRANTED.** The Court finds that PRMSA is not entitled to Eleventh Amendment immunity and its earlier decision making a determination to the contrary is hereby **VACATED.** The Final Judgment entered by the Clerk of the Court on April 23, 1993, is also hereby **VACATED.**

IT IS SO ORDERED.