**Ivan ARROYO OTERO, et al., Plaintiff,**

v.

**Pedro HERNANDEZ PURCELL, et al., Defendant.**

**Civ. No. 92–1704 (JP).**

United States District Court, D. Puerto Rico.

Oct. 14, 1992.

Zulma R. Rosario Vega, San Juan, P.R., for plaintiff.

María del C. Betancourt Vázquez, Rosa E. Palou, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendant.

## OPINION & ORDER

PIERAS, District Judge.

This is a civil rights action filed under 42 U.S.C. § 1983 by twelve former employees of the Puerto Rico Land Administration (hereinafter "PRLA") against the PRLA, its Executive Director, its Deputy Minister, the members of its Governing Board, and various officials of the Río Camuy Cave Park. Plaintiffs have sued each of the individual defendants in their personal and official capacities. The Court now has before it the unopposed Motion to Dismiss dated August 24, 1992, filed by defendants Pedro Hernández Purcell and the PRLA, which was joined by the other defendants by Motion dated September 1, 1992. For the reasons set forth below, the motion is hereby DENIED.

## I. Background

Each of the plaintiffs was a career employee who worked at the Río Camuy Cave Park until May 26, 1991, at which time they were informed of their dismissals. Plaintiffs aver that they were dismissed because of their activity in a campaign in favor of electing a labor union to represent the employees of the PRLA, particularly those employees working within the Río Camuy Cave Park. In support of this averment, plaintiffs state that they were dismissed five days prior to a scheduled labor election and that immediately following their dismissals the PRLA requested that the Puerto Rico Labor Relations Board remove their names from the list of employees eligible to vote in the election. Plaintiffs' complaint alleges violations of their rights under the First, Fifth and Fourteenth Amendments to the United States Constitution.

The PRLA was created to carry out the public purposes of furthering the development of public works and social and economic welfare programs through the effective and full utilization and maintenance of land in Puerto Rico. 1962 L.P.R. pp. 13–14 (Legislative History); 23 L.P.R.A. §§ 311f(h) and (w).[1] The PRLA is a public corporation having a juridical personality separate from that of the Commonwealth of Puerto Rico. 23 L.P.R.A. § 311b. It powers are exercised by a Governing Board comprised of various government officials, including the Governor of Puerto Rico, the Chairman of the Puerto Rico Planning Board, four cabinet officials, and four independent members appointed by the Governor with the advice and consent of the Puerto Rico Senate. 23 L.P.R.A. § 311b(b). The debts, obligations, contracts, and other financial activities of the PRLA are deemed to be its responsibility and not the responsibility of the Commonwealth. 23 L.P.R.A. § 311e. In carrying out its financial responsibilities, the PRLA may make contracts, borrow money, give security and issue bonds, and accept financial assistance on its own behalf or on behalf of the Commonwealth. 23 L.P.R.A. §§ 311f(i), (m) and (n). All funds of the PRLA must be deposited with recognized depositories of the funds of the Commonwealth to be kept in a separate account. 23 L.P.R.A. § 311h. This account must be examined at least once a year by the Commonwealth Comptroller. 23 L.P.R.A. § 311i. The PRLA must submit to the Puerto Rico Assembly at the end of each fiscal year a financial statement, a report on the transactions made by the Administration in the prior year, and a report on the status and progress of all activities of the Administration since its creation. 23 L.P.R.A. § 311s. The PRLA has the power to sue and be sued. 23 L.P.R.A. § 311f(f). Its property and accounts are exempt from all Commonwealth and municipal taxes. 23 L.P.R.A. § 311n.

---

1. The PRLA's purposes include, but are not limited to, acquiring property deemed desirable in carrying out its purposes or otherwise deemed beneficial to the people and Commonwealth of Puerto Rico, supervising and controlling such property, and selling and disposing of such property when it is deemed no longer desirable or beneficial (23 L.P.R.A. §§ 331f(j), (k), (o) and (q)), making surveys and measurements and conducting investigations with regard to the nature, condition and price of private property (23 L.P.R.A. § 311f(r)), promoting the development of open areas in their natural state to protect the environment (23 L.P.R.A. § 311f(x)), and achieving perpetual succession (23 L.P.R.A. § 311f(a)).

## II. Discussion

### A. *Dismissal Standard*

■ Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Federal Bank*, 948 F.2d 41 (1st Cir.1991). The court must accept as true the well-pleaded factual averments contained in the complaint, while at the same time drawing all reasonable inferences therefrom in favor of the plaintiff. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 276, 96 S.Ct. 2574, 2576, 49 L.Ed.2d 493 (1976); *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 51 (1st Cir.1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989). *But see Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987) (quoting *Snowden v. Hughes*, 321 U.S. 1, 10, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944) (In reviewing complaint, Court should "eschew any reliance on bald assertions, unsupportable conclusions, and 'opprobrious epithets.'"))

■ In opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13, 22 (1st Cir.1991). Rather, the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present a legal theory that will support his claim. *Id.* at 23 (citing *Correa–Martínez*, 903 F.2d at 52; *Dartmouth Review*, 889 F.2d at 16; *Ryan v. Scoggin*, 245 F.2d 54, 57 (10th Cir.1957)) ("No amount of interpretive liberality can save chestnuts so poorly protected from the hot fire of dismissal.") Plaintiff must set forth in his complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

### B. *Eleventh Amendment Immunity*

The Eleventh Amendment bars the commencement and prosecution in federal court of certain suits claiming money damages brought against any state, including Puerto Rico, without its consent. *Accord In re San Juan Dupont Plaza Hotel Fire Litigation*, 888 F.2d 940, 942 (1st Cir.1989) ("The Commonwealth of Puerto Rico is treated as a state for Eleventh Amendment purposes."); *see also Ramírez v. Puerto Rico Fire Service*, 715 F.2d 694, 697 (1st Cir.1983); *Fernández v. Chardón*, 681 F.2d 42, 59 n. 13 (1st Cir.1982), *aff'd*, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983).[2]

---

**2.** The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. One commentator has noted that "[t]he first lesson to be learned about the eleventh amendment is that it does not mean only what it literally says: it also means something more and something less." 2 J. Cook & J. Sobieski, *Civil Rights Actions* 2–4 ¶ 2.01 (Bender 1991). By its own terms, the amendment prohibits suits in federal court brought against a state by citizens of another state or citizens of a foreign country. The amendment has been construed by the courts as also barring suits in federal court against a state brought by its own citizens (*Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)), by a foreign country (*Principality of Monaco v. Mississippi*, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934)), by a municipal authority (*accord Municipal Authority of Town of Bloomsburg v. Commonwealth Dept. of Environmental Resources*, 496 F.Supp. 686 (D.C.Pa.1980)), and by an Indian tribe (*accord Standing Rock Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135 (8th Cir. 1974)). The Court has also extended the scope the amendment to included suits in admiralty. *Ex parte New York*, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).

The amendment does not, however, bar suits in federal court against a state brought by another state (*see, e.g., Kansas v. Colorado*, 206 U.S. 46, 83, 27 S.Ct. 655, 661, 51 L.Ed. 956

### 1. Institutional Immunity

 The Eleventh Amendment immunity is not limited to cases in which a state is a party of record. *Accord Mt. Healthy City School Dist. Bd. of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). It may also apply in cases involving diverse governmental entities, including schools, cities, counties, state agencies, multi-state agencies, governors, and officers. 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* Civil 2d § 3524 at 128–29 (West 1984). When an action is brought against such an entity or individual, a court must consider whether the defendant is " 'an arm [or alter ego] of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend.' " *Ainsworth Aristocrat Int'l Party, Ltd. v. Tourism Co. of Puerto Rico,* 818 F.2d 1034, 1036 (1st Cir.1987) (quoting *Mt. Healthy City School District Bd. of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977)).

In addressing this issue to determine the "type of activity" engaged in by the defendant that is the object of plaintiff's claim (*accord Puerto Rico Ports Authority v. M/V MANHATTAN PRINCE,* 897 F.2d 1, 10 (1st Cir.1990)), the Court must consider:

local law and decisions defining the nature of the agency involved; whether payment of any judgment will come out of the state treasury; whether the agency is performing a governmental or proprietary function; the agency's degree of autonomy; the power of the agency to sue and be sued and enter into contracts; whether the agency's property is immune from state taxation and whether the state has insulated itself from responsibility for the agency's operations.

*Id.* at 9 (citing *Ainsworth,* 818 F.2d at 1037); *see also Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 400–402, 99 S.Ct. 1171, 1176–1177, 59 L.Ed.2d 401 (1979); *Durning v. Citibank, N.A.,* 950 F.2d 1419, 1423 (9th Cir. 1991); *Figueroa–Rodríguez v. Aquino,* 863 F.2d 1037, 1044 (1st Cir.1988)). These factors should not be applied mechanically but should instead be used to assist the Court in assessing whether the defendant "acted more like a private company, or more like the Commonwealth's government, in conducting the activities relevant to this ... suit." *Royal Caribbean Corp. and Caribbean Cruise Line, Ltd. v. Puerto Rico Ports Authority,* 973 F.2d 8, 10 (1st Cir. 1992) (citing *M/V MANHATTAN PRINCE,* 897 F.2d at 10; *Jacintoport v. Greater Baton Rouge Port Commission,* 762 F.2d 435, 442 (5th Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986)).

 The Courts of this District have on many occasions held that the protections of the Eleventh Amendment extend to various agencies or instrumentalities of the Commonwealth of Puerto Rico that act as arms of the Commonwealth.[3] On other occa-

---

(1907)) or brought by the United States (*see; e.g., United States v. Mississippi,* 380 U.S. 128, 140–41, 85 S.Ct. 808, 814–15, 13 L.Ed.2d 717 (1965); *United States v. Texas,* 143 U.S. 621, 642–46, 12 S.Ct. 488, 492–93, 36 L.Ed. 285 (1892)), nor does it bar suits against a state in the courts of another state (*Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416, *reh'g denied,* 441 U.S. 917, 99 S.Ct. 2018, 60 L.Ed.2d 389 (1979).

An Eleventh Amendment issue is one of jurisdiction. *Accord Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984).

**3.** *See, e.g., Pérez v. Rodríguez Bou,* 575 F.2d 21 (1st Cir.1978) (University of Puerto Rico immune from suits in federal court); *In re San Juan Dupont Plaza Fire Litigation,* 888 F.2d 940, 943–44 (1st Cir.1989) (Puerto Rico Tourism Company immune where the Commonwealth supplied 70–75 percent of its funds; statutory provision that Commonwealth not liable for its debts insufficient to outweigh other factors); *Rodríguez Díaz v. Sierra Martínez,* 717 F.Supp. 27, 29–31 (D.Puerto Rico 1989) (Pieras, J.) (Puerto Rico Medical Services Administration immune from malpractice suit in federal court since it provides a governmental function in administering medical complex and judgment would be paid at least in part out of Commonwealth treasury); *New Progressive Party v. Hernández Colón,* 779 F.Supp. 646, 652 (D.Puerto Rico 1991) (Puerto Rico Elections Commission immune from suit in federal court); *Avilés Martínez v. Jiménez Monroig,* 764 F.Supp. 240 (D.Puerto Rico 1991) (Pieras, J.), *aff'd in part and rev'd in part,* 963 F.2d 2 (1st Cir.1992) (Puerto Rico Automobile Accident Compensation Administration immune from suit for mon-

sions we have held that its protections do not extend to various agencies and instrumentalities of the Commonwealth whose activities are more proprietary than governmental.[4] We have not had the opportunity to consider whether its protections extend to the PRLA. Even if a prior pronouncement existed, however, it would not necessarily be determinative since the Court must consider each claim of sovereign immunity in the context of the particular claim brought by the plaintiff.[5]

■ Several factors in this case suggest that the PRLA is acting merely as an arm of the Commonwealth of Puerto Rico and is therefore entitled to Eleventh Amendment immunity. Its purpose is to further the development of public works and social and economic welfare programs. Its Governing Board is comprised primarily of government officials. It must submit annual reports to the Legislative Assembly summarizing its financial condition and the progress of its transactions and projects. And its property and accounts are exempt from Commonwealth taxes. In addition, although the PRLA has the power to acquire and sell property, which suggests that it has certain proprietary functions, in this case plaintiffs are seeking relief based on the PRLA's conduct relating to administration and personnel, two of its more governmental functions.

On the other hand, several factors in this case suggest that the PRLA has considerable autonomy and is therefore an independent entity not entitled to Eleventh Amendment immunity. The PRLA was created as a separate juridical entity. It has the power to enter into contracts and to assume debts, both of which become its independent responsibility. It may assume loans and accept financial aid on its own behalf. And its funds are kept in an account separate from Commonwealth funds.

■ After considering these factors, the Court finds that it is not in a position to state as a matter of law that the PRLA is or is not entitled to Eleventh Amendment immunity in this case. The information presented to the Court is not only incomplete but lacks a suitable discussion of several of the more important factors to be considered. *Accord Ainsworth, supra,* at 1038 (footnote omitted) ("The decision whether a state institution or entity is an arm of the state for Eleventh Amendment purposes should not be made without a full examination of all the factors.") Although many factors must be weighed in determining whether an instrumentality is entitled to Eleventh Amendment immunity, two factors predominate: first, whether the agency exercises a traditional governmental function as opposed to a proprietary function; and second, whether the funds to satisfy a potential adverse judgment will be drawn from the public treasury or from the independent funds of the agency. *See also Ainsworth, supra,* at 1038 (another "crucial factor" is "the actual day-to-day financial and operational autonomy of the [agency]"). Defendants have not brought forth

etary damages); *Martínez v. Junta de Planificación de Puerto Rico,* 736 F.Supp. 413, 422 (D.Puerto Rico 1990) (Puerto Rico Planning Board and Culebra Conservation and Development District immune from action for damages); *Villegas Dávila v. Pascual,* 631 F.Supp. 919 (D.Puerto Rico 1986) (Compañía de Fomento Recreativo is an arm of the state entitled to immunity).

4. *See, e.g., Riefkohl v. Alvarado,* 749 F.Supp. 374 (D.Puerto Rico 1990) (Puerto Rico Electrical Power Authority not immune in suit for damages because it is fiscally autonomous and holds the power to administer its own affairs); *Laborde García v. Puerto Rico Telephone Co.,* 734 F.Supp. 46, 47 (D.Puerto Rico 1990) (comment-

ing that defendant has consistently been denied Eleventh Amendment Immunity).

5. *Compare Royal Caribbean Corp. and Caribbean Cruise Line, Ltd. v. Puerto Rico Ports Authority,* 973 F.2d 8, 10 (1st Cir.1992) (Puerto Rico Ports Authority *not immune* in suit claiming negligent maintenance of pier where Authority "sold" docking facilities) *with Puerto Rico Ports Authority v. M/V MANHATTAN PRINCE,* 897 F.2d 1, 10 (1st Cir.1990) (Ports Authority *immune* in suit claiming negligence by an Authority-licensed harbor pilot where Authority did not "sell" pilot service); *see also Jacintoport v. Greater Baton Rouge Port Commission,* 762 F.2d 435, 442 (5th Cir.1985) (reasons for immunity are stronger where plaintiff's claim implicates public policy or public affairs).

any information that would assist the Court in determining how these two factors operate in this case.

In their brief, defendants argue that "the fact that the statute that creates the Administration *does not declare* that the Commonwealth will not be responsible for the debts of the Administration [and] that the Administration does not operate for profit ... [leads to] the inescapable conclusion that ... the Puerto Rico Land Administration is an arm of the state and should be entitled to sovereign immunity." This naked assertion is insufficient. Despite the apparent fact that the PRLA is engaged in a traditional governmental function, defendants address this issue only obliquely. Defendants do not address in any fashion the issue of whether the PRLA enjoys day-to-day financial and operational autonomy. The fact that the PRLA's enabling legislation does not state that the Commonwealth bears no responsibility for debts of the PRLA may be relevant to show whether the Commonwealth will pay any part of an adverse judgment, but only if other similar statutes contain such declarations of responsibility. *See, e.g., Ainsworth, supra,* at 1038 (footnote omitted) ("We emphasize ... that the Commonwealth of Puerto Rico has declared that it will not be responsible for the debts of the Company and that the creditors of the Company may look only to the Company for satisfaction of its debts.") Defendants have not, however, brought to the Court's attention any such statutes. In addition, such information might not be fully determinative. Defendants should bring forth sworn statements or other evidence which clearly shows that funds to pay any adverse judgment in this case will be drawn at least in part from the Commonwealth treasury.

Defendants have not only lost sight of the forest by concentrating on its trees but have also inexplicably lost sight of the tallest trees. It may be that this is a case in which the claims against the PRLA should have been disposed of by a motion to dismiss. It may be that at a later stage in these proceedings defendants will present this Eleventh Amendment issue to the Court in a more complete and appropriate fashion. At this time, however, defendants' motion to dismiss plaintiffs' claims against the PRLA must be DENIED.

### 2. Waiver

█ The protections of the Eleventh Amendment do not apply in situations in which a state waives its immunity and consents to suit in federal court. Such a waiver may be effectuated by a state statute or constitutional provision or where a state otherwise waives its immunity to suit in the context of a particular federal program. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238 n. 1, 105 S.Ct. 3142, 3145 n. 1, 87 L.Ed.2d 171 (1985). Because the Court does not find that the PRLA is an arm of the Commonwealth of Puerto Rico which enjoys Eleventh Amendment immunity, it is not necessary for the Court to consider the issue of waiver at this juncture; however, because the Court expects that the Eleventh Amendment will be revisited in this case, and finds the issue of waiver here presented relatively straightforward, the Court proceeds to address the issue.

A state can be deemed to waive its Eleventh Amendment immunity "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). The Supreme Court has emphatically stated:

The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one. Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment...." [A] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued. Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*

*Atascadero, supra,* at 241, 105 S.Ct. at 3146 (citations omitted); *see also Hernández–Tirado v. Artau,* 874 F.2d 866, 873 (1st Cir.1989); *Marín–Piazza v. Aponte–Roque,* 873 F.2d 432, 436–37 (1st Cir.1989).

The statute in this case which might arguably constitute a waiver of any immunity enjoyed by the PRLA is 23 L.P.R.A. § 311f(f), which grants the PRLA the right "to sue and be sued." While this language expressly waives the PRLA's right to assert sovereign immunity in the Commonwealth courts, it does not take the additional step of explicitly waiving the PRLA's right to assert Eleventh Amendment immunity in *federal* courts. As a result, it fails to meet the requirements set forth by the Supreme Court and cannot be deemed a waiver of the PRLA's immunity under the Eleventh Amendment, if such immunity is in fact enjoyed by PRLA.

### 3. Official Immunity

It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983) (citing *Ex parte Young,* 209 U.S. 123, 160–62, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908). This is true whether the official is acting within or outside the scope of his or her official authority as defined by state law. *Home Telephone & Telegraph Co. v. City of Los Angeles,* 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913). This doctrine does not extend, however, to the award of monetary damages. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). As a result, "injunctive relief that has the effect of ordering state officials to pay retroactive benefits from the state treasury is barred by the Eleventh Amendment." *Doucette v. Ives,* 947 F.2d 21, 30 (1st Cir.

1991) (citing *Edelman,* 415 U.S. at 668–69, 94 S.Ct. at 1358). On the other hand, prospective injunctive relief may be awarded against a state officer sued in his official capacity, even in situations in which the award may have some effect on the future allocation of public funds. *Edelman,* 415 U.S. at 676, 94 S.Ct. at 1362.[6] In addition, under 42 U.S.C. § 1983, state officials can be held personally liable for damages caused by their unconstitutional acts. *Scheuer v. Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974).

As a result, the Eleventh Amendment bars suits filed in federal court against a state official sued in his or her official capacity seeking retroactive monetary relief. In this case plaintiffs are seeking retroactive relief in the form of back pay. *Accord Figueroa–Rodríguez v. Aquino,* 863 F.2d 1037, 1044 (1st Cir.1988) (eleventh amendment bars award of back pay against a state or alter ego of a state where payment must be made out of state treasury). The individual defendants have asserted that any monetary judgment levied against them in their official capacities would be paid not by them but by the PRLA "and therefore [by] the Commonwealth." Since defendants have failed to establish that the PRLA is an alter ego of the Commonwealth, their argument regarding their own immunity must necessarily fail. Defendants have again merely alleged, without proving, that any potential adverse judgment in this case would impact the Commonwealth treasury. Absent such proof, their motion to dismiss plaintiffs' claims against defendants in their official capacities must also be DENIED.

IT IS SO ORDERED.

---

**6.** Plaintiffs should note, however, that other obstacles exist to obtaining equitable relief. *Accord* 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* Civil 2d § 4232 p. 569 (West 1988) (footnotes omitted) ("[A] plaintiff who has brought his case within the Young doctrine must still overcome the other statutory and court-made barriers to such injunctions. '[N]o injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great irreparable injury.'"). *But see* Chayes, *The Role of the Judge in Public Law Litigation,* 89 Harv.L.Rev. 1281 (1976) (discussing fact that equitable relief has become an ordinary feature in public law litigation, ceasing to be granted only in extraordinary circumstances).