**Frances MELENDEZ by Her and as Tutor of the Minor Children Jose, Melvin and Frank Melendez, Plaintiffs,**

v.

**The COMMONWEALTH OF PUERTO RICO The PUBLIC RECREATION & PARKS ADMINISTRATION; The Puerto Rico Electric Power Authority; Eastern American Insurance Co.; The Recreation Development Company X, Y, Z, Insurance Company, Inc., Defendants.**

Civ. No. 91–2453CCC.

United States District Court,
D. Puerto Rico.

Jan. 26, 1994.

As Amended Jan. 28, 1994.

---

Glenn Carl James–Hernández, Mercado & Soto, for plaintiffs.

Pedro Santiago–Torres, for PREPA.

Guillermo Macari, Dept. of Justice, Com. of P.R., for defendants.

## OPINION AND ORDER

CEREZO, Chief Judge.

The Department of Sports and Recreation[1] (hereinafter DSR), and Recreation Development Company (hereinafter RDC) have filed a Motion for Summary Judgment **(docket entry 33)**, as supplemented **(docket entry 62)**. This is a personal injury action filed by Frances Meléndez, in representation of minors José, Melvin, and Frank Meléndez,[2] claiming that José sustained serious injuries after receiving an electric shock from an unlocked transformer. It is specifically claimed that there was negligence in maintaining the unlocked transformer without visible warnings at a park owned or main-

---

1. In its first appearance, a Motion Requesting Stay filed on May 11, 1993 **(docket entry 45),** this co-defendant identified itself as the "Department of Sports and Recreation (formerly the Public Recreation and Parks Administration)." Although recognizing the change of name in their filings, plaintiffs did not amend the caption of the complaint.

2. Frances Meléndez requested voluntary dismissal of her personal claim *(see* **docket entries 66 and 70).**

48

tained by the Public Recreation and Parks Administration,[3] and/or RDC.

Initially, RDC requested summary judgment on the basis of absence of control over the park where the accident occurred, while DSR claimed that, as an alter ego of the Commonwealth, it enjoys immunity from suit under the Eleventh Amendment. Plaintiffs replied asserting that DSR did not present sufficient evidence to satisfy its burden of proof (**docket entry 39**). DSR countered (**docket entry 41**) by discussing in depth the factors that bear upon an Eleventh Amendment immunity determination and submitting additional evidence in the form of certifications under penalty of perjury, pursuant to 28 U.S.C. § 1746. Subsequently, in its supplement to the motion for summary judgment (**docket entry 62**), RDC also claimed Eleventh Amendment immunity, and that the alleged cause of action was time barred. Plaintiffs then supplemented their opposition to the motion for summary judgment due to the fact that RDC adduced for the first time the sovereign immunity defense (**docket entry 68**).

After carefully reviewing the positions of the parties and the statements made under penalty of perjury we conclude that, in the context of the action initiated, both DSR and RDC are arms of the Commonwealth and, as such, are entitled to immunity from federal adjudication under the Eleventh Amendment.

## I. The Applicable Law

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The primary purpose of the amendment is to assure that the federal courts do not interfere with a state's public policy and its administration of

internal public affairs. *In re Ayers*, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887). It is concerned with minimizing the federal court's involvement in the disbursal of the state fisc. *Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority*, 991 F.2d 935 (1st Cir.1993).

The Eleventh Amendment acts as a jurisdictional bar and defense to all suits claiming money damages brought in federal court against a state,[4] without its consent. *Trans Am. Recovery Serv. v. P.R. Maritime Shipping*, 820 F.Supp. 38, 41 (D.P.R.1993). Its application to a public agency or institution depends upon whether the entity "is to be treated as an arm [or alter ego] of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." *Ainsworth Aristocrat Intern. Pty. v. Tourism Co.*, 818 F.2d 1034, 1036 (1st Cir.1987); *quoting Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).

Whether an entity is protected will depend largely on how it is structured. 12 Jeremy C. Moore, et al, *Moore's Federal Practice*, ¶ 300.03[4], (2d ed. 1985). As a general rule, an institution is immune from federal adjudication if the state has a legal obligation to satisfy judgments against it. *Metcalf & Eddy*, 991 F.2d at 939. However, when it is not clear whether, or to what extent, such an obligation exists, other areas which may indicate how tightly the agency and the state are entangled should be examined. *Id.* at 939–40.

Eleventh Amendment protection depends, primarily, on whether the state-created entity "performs a governmental function, whether it functions with substantial autonomy, to what extent it is financed independently of the state treasury, and if a judgment sought to be entered against the

---

**3.** The Public Recreation and Parks Administration is the legal predecessor to the Department of Sports and Recreation. 3 L.P.R.A. § 442d; *see* also *Rivera–Maldonado v. Commonwealth of Puerto Rico*, 119 D.P.R. 74 (1987).

**4.** The Commonwealth of Puerto Rico is treated as a state for Eleventh Amendment purposes. *See In re San Juan Dupont Plaza Hotel Fire Litigation*, 888 F.2d 940, 942 (1st Cir.1989); *Ramírez v. Puerto Rico Fire Service*, 715 F.2d 694, 697 (1st Cir.1983).

[entity] will be satisfied out of the state treasury." *In re San Juan Dupont Plaza Hotel Fire Litigation*, 888 F.2d 940, 942 (1st Cir.1989); *quoting Figueroa–Rodriguez v. Aquino*, 863 F.2d 1037, 1042 (1st Cir.1988); *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 517 (1st Cir.1987). The factors relevant to this inquiry include whether the entity "has been separately incorporated; ... whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the [entity's] operations." *In re San Juan Dupont Plaza Hotel*; 888 F.2d at 942, *quoting Ainsworth Aristocrat*, 818 F.2d 1034, 1037. While the determination of whether an agency is an arm of the state is a matter of federal law, local law and decisions defining the status and nature of the agency in its relation to the sovereign should also be considered. *Metcalf & Eddy*, 991 F.2d at 942; *Ainsworth Aristocrat*, 818 F.2d at 1037.

## II. Department of Sports and Recreation

The Legislature of the Commonwealth of Puerto Rico made it abundantly clear that the DSR was to perform a governmental function. The Legislature stated in 1980 that "[t]he health and well-being of citizens is one of the objectives any contemporary government strives to achieve." Statement of Motives, Act No. 126 of June, 13, 1980, 1980 Laws of P.R. 469. The Legislature "visualize[d] an improvement in the social and congenial aspects of ... [the Island's] citizens by achieving a proper balance in the good use of leisure time in sports and recreational activities, as well as in work and education." *Id.*

The DSR was created as the government's response to the citizens' increased demand for recreational activities and facilities. *Id.* at pp. 469–70. The government set itself "to encourage and stimulate sports and recreation in Puerto Rico." *Id.* Government efforts were directed to "promoting the practice of sports and recreation as instruments to achieve a better enjoyment of life," and to provide citizens, through their involvement in recreation, with mechanisms to develop an emotional balance that would enable them to face everyday problems. *Id.* at p. 470. To that end, the DSR was created with a programmatic emphasis on the encouragement, promotion and programming of sports and recreational activities, and their regulation and supervision. *Id.*

It should be noted that the basis of the plaintiffs' claim is that DSR's negligence in maintaining one of its parks was the cause of their damages. Defendants' Exhibit B, a deed executed before notary public Garcia–Malatrasi, establishes that the Commonwealth of Puerto Rico is the owner of the Jardines de Country Club park. In administering and controlling one of the Commonwealth's parks the DSR was complying with one of its statutorily imposed duties, *see* 15 L.P.R.A. § 2; clearly a government function.

The Government exerts significant control over the planning and administration of the DSR. The DSR was created as an executive department of the Commonwealth. 3 L.P.R.A. § 442b. The DSR is directed by a Secretary (hereinafter the "Secretary") which is appointed by the Governor, with the advice and consent of the Senate. 3 L.P.R.A. § 442c. An Advisory Board helps the Secretary formulate and implement the public policy on Sports and Recreation. 3 L.P.R.A. § 442i. The Advisory Board is presided by the Secretary and comprised by the Secretaries of Education, Health, Social Services, Natural Resources, and by the Executive Director of the Office of Youth Affairs, the Director of the Tourism Company, and eight private citizens with known interests in sports and recreation. *Id.* With the noteworthy exception of the Director of the Tourism Company, who is appointed by the Board of Directors of said company,[5] all members of the Advisory Board are appointed by the Governor. Constitution of the Commonwealth of Puerto Rico, Art. IV., §§ 5–6, 3 L.P.R.A. § 171, 3 L.P.R.A. § 211a, 3

---

5. *See* 23 L.P.R.A. §§ 671b–671c. However, this Court has previously found that as a practical matter, the Governor determines who will be the Tourism Company's Director. *In re San Juan Dupont Plaza Hotel*, 888 F.2d at p. 943.

L.P.R.A. § 154, 3 L.P.R.A. § 1606, 3 L.P.R.A. § 442i.

The Secretary of the DSR has the power to rent, give in usufruct, transfer or alienate any recreational facility belonging to the Department or the Commonwealth government to any other agency, municipality, or bona fide private organization, but only after obtaining the approval of the Secretary of the Treasury. 3 L.P.R.A. § 442g. As a member of the Governor's advisory council, the Secretary of the Treasury Department is also appointed by the Governor. Constitution of the Commonwealth of Puerto Rico, Art. IV §§ 5–6. DSR must purchase its equipment, materials and everything needed to carry on with its functions through the General Services Administration, an agency of the Executive Branch. 3 L.P.R.A. § 442t. To procure items outside the procedure established by the General Services Administration, the Secretary must first obtain the approval from the Secretary of the Treasury. *Id.*

Finally, to wrap up government's control over the DSR, the Secretary must render a report on the work accomplished during the year to the Governor and Legislature at the end of each fiscal year. 3 L.P.R.A. § 442v.

The DSR's operations are financed by the Commonwealth's treasury. All funds needed for the implementation of the DSR's policy are to be included in the General Budget of Expenditures of the Government of Puerto Rico. 3 L.P.R.A. § 442d. The DSR must submit to the Legislature, through the Governor's Office, its annual budget. 3 L.P.R.A. § 442t.

The money received by the DSR is not differentiated from the money received by the Commonwealth. All receipts of the DSR from any source, including the fines it imposes, are to be deposited into the funds of the Commonwealth Treasury. 15 L.P.R.A. § 11. The only exception to this rule is when persons or organizations donate funds for the construction of parks. In these cases, the money is to be put into a restricted revenue account established by the Secretary of the Treasury and shall be used only for the construction, development, and equipping of parks. 15 L.P.R.A. § 13.

Courts consistently have found that "perhaps the most important [factor in an Eleventh Amendment immunity determination] is whether, in the event the plaintiff prevails, the payment of the judgment will have to be made out of the state treasury...." *Ainsworth Aristocrat,* 818 F.2d at 1037, quoting *Blake v. Kline,* 612 F.2d 718, 722 (3rd Cir. 1979), *see also Metcalf & Eddy,* 991 F.2d at p. 940 (the principal issue is the agency's access to the Commonwealth's Treasury), *Villegas Dávila v. Pascual,* 631 F.Supp. 919, 920 (D.P.R.1986) (a critical factor is whether in the event the plaintiff prevails, judgement will have to be paid out of the state treasury.), *Cf. Trans Am. Recovery Serv. v. P.R. Maritime Shipping,* 820 F.Supp. 38, 42–43 (D.P.R.1993) (two factors predominate: whether the funds to satisfy a potential adverse judgement will be drawn from the public treasury, and whether the agency exercises a traditional governmental function). As the DSR has no source of funds other than the Commonwealth's treasury, it is clear that, in the event judgment is entered against the DSR, payment will have to be made out of the Commonwealth's treasury.

Defendants have submitted certifications under penalty of perjury, pursuant to 28 U.S.C. § 1746, which support this conclusion.[6] In defendants' Exhibit C to their motion for summary judgment, Ibrahim Pérez, the former Secretary of the DSR, states that "in the funds appropriated by the Legislature [no amount has been] ... included for the payment of judgments in civil cases ..." and that "judgments are paid through the Treasury Department...." Georgina Iglesias Prieto, Director of the Finance Division of the DSR, attests to the same facts in defendants' Exhibit D. The Assistant Director of the Area of the Treasury at the Commonwealth's Department of Treasury, S. Pescador, indicates in Exhibit E that "all money

---

**6.** Courts have accepted sworn statements to prove whether payment for a judgment will be made out of the state funds. *See e.g. In re San Juan Dupont Plaza Hotel,* 888 F.2d at p. 943,

*Culebras Enterprises Corp. v. Rivera Ríos,* 813 F.2d 506, 517 (1st Cir.1987), *Villegas Dávila,* 631 F.Supp. at p. 921.

awards imposed against the ... [DSR] as a result of judicial suits for damages are paid by the Commonwealth of Puerto Rico, through its Treasury Department." After considering the primary factors which bear on our inquiry, the balance is overwhelmingly in favor of granting the DSR immunity from federal adjudication.

 A review of the other factors that should be considered does not alter this conclusion. The DSR has not been separately incorporated. It is an executive department of the Commonwealth. 3 L.P.R.A. § 442b. Although the DSR has the power to sue and be sued, 15 L.P.R.A. § 2, the statutory provision that confers that power does not indicate that the agency has waived its Eleventh Amendment immunity.[7]

The DSR has the power to enter into contracts. The Secretary may employ the necessary professional and technical services to accomplish DSR's objectives. 3 L.P.R.A. § 442c. The agency may enter into agreements with instrumentalities of the Government, municipalities, public corporations, and private institutions. 3 L.P.R.A. § 442f(p). The DSR may acquire real or personal property, either by buying it or by exercising its power of eminent domain. 15 L.P.R.A. § 3. Nonetheless, all property is acquired in the name of the Commonwealth of Puerto Rico. *Id.*

Finally, local law also supports the finding that the DSR is an arm of the Commonwealth. In *Canchani v. C.R.U.V.*, 105 D.P.R. 352 (1976), the Supreme Court of Puerto Rico concluded that the DSR is an agency and instrumentality of the Commonwealth of Puerto Rico. The Supreme Court stated that

[i]n short, the [DSR] ... is not a public corporation ... it does not have its own income; it does not have fiscal autonomy to make loans, to issue bonds, or to keep bank accounts; it does not have a Board of Directors to govern itself since its Administrator is appointed by the Governor; it is not empowered to accept donations since it accepts them in the name of the Commonwealth government; and it executes contracts and exercises other functions in representation of the Commonwealth. All those limitations are contrary to the concept of corporate autonomy.

*Id.*, p. 357. (Official translation)

In sum, the DSR's institutional fabric is closely intertwined with that of the Commonwealth government. Having determined that the DSR is entitled to Eleventh Amendment immunity, this court has no subject matter jurisdiction and the action initiated against it must be dismissed.

### III. The Recreational Development Company

Whether the RDC enjoys sovereign immunity has been examined before by this Court. In *Villegas Dávila v. Pascual*, 631 F.Supp 919, 920 (D.P.R.1986), RDC moved to dismiss an action initiated against it to recover damages allegedly suffered as a result of its failure to promulgate and enforce rules and regulations for the safety and welfare of the visitors and patrons of a resort. It was found that the RDC was entitled to Eleventh Amendment immunity in light of its governmental function and the degree of state control exercised over it. *Id.*, at p. 922.

---

7. In order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985), *Della Grotta v. State of Rhode Island*, 781 F.2d 343, 346 (1st Cir.1986). A state can be deemed to have waived its Eleventh Amendment immunity "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360,

39 L.Ed.2d 662 (1974), quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909).

The provision in question fails to meet this stringent test. The language of the statute expressly waives DSR's sovereign immunity in the Commonwealth courts. However, it does not take the additional step of explicitly waiving DSR's right to assert Eleventh Amendment immunity in federal courts. *See Arroyo Otero v. Hernández Purcell*, 804 F.Supp. 418, 425 (D.P.R.1992). Therefore, the DSR has not waived its immunity under the Eleventh Amendment.

Plaintiffs suggest that we disregard *Villegas* because it was decided in 1986, before *Metcalf & Eddy*, 991 F.2d at 942, a decision which they argue changed the standard of inquiry for Eleventh Amendment immunity claims. *Metcalf & Eddy*, however, is entirely compatible with *Villegas*. It is true that it was not until 1987, in *Ainsworth Aristocrat*, 818 F.2d at p. 1034, when our Circuit articulated what has become known as the analysis of the *Blake/Ainsworth* factors; see *Rodriguez Díaz v. Sierra Martínez*, 717 F.Supp. 27, 30 (D.P.R.1989), which remained essentially unchanged through *Metcalf & Eddy*. We note, nonetheless, that the court in *Villegas* reached its decision after performing an analysis of a series of factors[8] that might indicate a relationship between the government and the RDC, a test not unlike an analysis of the *Blake/Ainsworth* factors, although concededly less structured.

■ Today we revisit RDC's Eleventh Amendment immunity claim, since the court must consider each allegation of sovereign immunity in the context of the particular action brought by the plaintiff. *See e.g. Royal Caribbean Corp. and Caribbean Cruise Line Ltd. v. Puerto Rico Ports Authority*, 973 F.2d 8, 10 (1st Cir.1992), *Puerto Rico Ports Authority v. M/V Manhattan Prince*, 897 F.2d 1, 10, (1st Cir.1990), *Arroyo Otero v. Hernández Purcell*, 804 F.Supp. 418, 423 (D.P.R.1992).

■ We note at the outset that the RDC performs an eminently governmental function in developing physical facilities to provide the inhabitants of Puerto Rico with means for their recreation. *See* 15 L.P.R.A. § 504. It is the alleged neglect of one of these facilities which gives rise to this case.

Although the RDC has been structured as a public corporation, the government maintains significant control over its planning and administration. The RDC is a governmental instrumentality of the Commonwealth. 15 L.P.R.A. § 504(a). It is subject to the ad-

ministrative control of the DSR. 15 L.P.R.A. § 504(a), 3 L.P.R.A. § 442h. The RDC is managed by a five-member board of directors, chaired by the Secretary of the DSR. 15 L.P.R.A. § 504(c). All five members are appointed by the Governor. 3 L.P.R.A. § 442c, 15 L.P.R.A. § 504(c).

Regarding its employment practices, the RDC is to prepare rules and regulations concerning the tenure and conditions of employment in consultation with the Office of Personnel of the Government. 15 L.P.R.A. § 508. Additionally, RDC's employees may avail themselves of the Commonwealth Government Employees Retirement System. *Id.*

The Legislature and the Governor periodically review the RDC's operations. The RDC must submit an annual financial and operational report. 15 L.P.R.A. § 518. Other reports of its activities and businesses shall also be submitted to the Governor and the Legislature when required. *Id.*

On the other hand, the RDC is "powered to determine the character of and necessity for all its expenditures and the manner in which they shall be incurred, allowed and paid without regard to the provisions of any laws governing the expenditure of public funds ..." thus having great discretion in its administration of expenses. 15 L.P.R.A. § 505(d). The RDC has the power to acquire in any lawful manner any type of property, and to alienate and dispose of its acquired property. 15 L.P.R.A. § 505(g), (k).

· We now turn to the crucial issues of financial dependence, and whether, in the event plaintiffs prevail, judgment will be satisfied out of the Commonwealth's treasury. Defendants have submitted certifications under penalty of perjury, pursuant to 28 U.S.C. § 1746, essentially stating that the RDC is not financially independent from the Commonwealth since it receives approximately 88% of its revenues from Legislative appropriations. Defendants' Exhibit O to their motion for summary judgment, a certification

8. The Court in *Villegas* considered whether in the event plaintiff prevailed, judgment would be paid out of the Commonwealth's treasury; the character of the RDC under Commonwealth law; its power to enter into contracts; its power to sue and be sued; whether the RDC has been separately incorporated; the responsibility of the government for RDC's obligations; the degree of governmental control over the RDC; whether the entity performs a governmental function; and whether the RDC is exempt from paying any state or municipal tax.

signed by Marimer Olazagasti, Secretary of the DSR and chairperson of the board of the RDC, and Exhibit P, a certification signed by Germán Díaz, Director of the RDC's Division of Budget and Finance, attest to these facts.

Additionally, the RDC has submitted audit reports performed by KPMG Peat Marwick for the years 1989 through 1991, defendants' Exhibits Q, R, and S, that support these certifications. These reports contain Combined Statements of Revenues, Expenditures, and Changes in Fund Balances which detail the sources of the funds used for the operation of the RDC. Four of the sources indicated in these statements are obviously governmental in nature: taxes on occupancy of hotel rooms, guest houses and apartment hotels;[9] legislative appropriations from the Commonwealth; contributions from the DSR; and other governmental appropriations. The RDC's other sources of revenues are federal contributions, municipal contributions, charges for services from the operation of recreational facilities, and other miscellaneous sources.

As shown in the table below, the RDC obtained an average of approximately 85% of its funds from governmental sources in the years 1989–1991. Such significant dependence indicates that in the event a judgment is entered against the RDC, the money to cover such judgment will be obtained from the public fisc. This crucial determination weighs heavily in favor of finding Eleventh Amendment immunity.

| Year | 1989 | 1990 | 1991 |
|---|---|---|---|
| Hotel Taxes | $ 7,784,859 | $ 7,493,609 | $ 7,665,211 |
| Legislative appropriations | $23,999,704 | $ 6,328,089 | $12,142,677 |
| Contributions from the DSR | $11,621,456 | $ 7,011,658 | $ 7,780,148 |
| Other governmental appropriations | $ 1,188,000 | $ 26,500 | $ 9,066 |
| Total | $44,594,019 | $20,859,856 | $27,597,102 |
| Total revenues per year | $49,163,407 | $25,288,660 | $33,849,118 |
| State funded proportion | 90.71% | 82.49% | 81.53% |
| Average state funded proportion | 84.91% | | |

Consideration of the other *Blake/Ainsworth* factors yields mixed results. The RDC is separately incorporated. It has "legal existence and personality separate and apart" from the government. 15 L.P.R.A. § 504. The RDC has the power to sue and be sued. 15 L.P.R.A. § 505. However, the language used by the statute is not the explicit waiver of Eleventh Amendment immunity required by the Supreme Court.[10] It has also the power to make contracts, 15 L.P.R.A. § 505(f), to borrow money and issue bonds. 15 L.P.R.A. § 505(n). However, the RDC is exempted from paying state or municipal tax on its property or operation of its activities. 15 L.P.R.A. § 514.

Contrary to the DSR, there is a statutory barrier between the RDC's operations and the Commonwealth's treasury. The RDC

9. 13 L.P.R.A. § 7355(e) provides that seventy percent (70%) of five-sixths (⅚) of the product of a room occupancy tax at hotels, motels, and guest houses is to be used to meet the payment of principal and interest of the bonds issued by the RDC and to meet the agency's objectives.

10. See note 6, supra.

has no power to pledge the credit or taxing power of the Commonwealth. 15 L.P.R.A. § 505(n). Furthermore, "[t]he bonds and other obligations issued by the Company shall not be a debt of the Commonwealth of Puerto Rico...." 15 L.P.R.A. § 512. Such bonds or obligations are payable only out of RDC's funds. *Id.*

Plaintiffs argue that *Metcalf & Eddy* dictates that the RDC is not immune from federal adjudication. In that case, the Court of Appeals denied Puerto Rico Aqueduct and Sewer Authority's (hereinafter PRASA) motion to dismiss on Eleventh Amendment grounds holding that a state agency cannot claim Eleventh Amendment immunity solely on the basis that judgments against it may absorb unrestricted funds donated by the state and, in that way, redound indirectly to the depletion of the state's treasury. *Metcalf & Eddy*, 991 F.2d at p. 941. In so holding, the Court deemed PRASA not an arm of the Commonwealth within the meaning of the Eleventh Amendment. Plaintiffs argue that *Metcalf & Eddy* stands for the proposition that an agency is not entitled to sovereign immunity when the state has no legal obligation to satisfy judgments entered against it. They contend that all monies received by the RDC are donations which do not trigger immunity. We believe otherwise.[11] It is only when a legal obligation to satisfy judgments exists, that the agency is entitled to Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Metcalf & Eddy*, 991 F.2d at p. 939; *Reyes v. Supervisor of D.E.A.*, 834 F.2d 1093, 1097–98 (1st Cir.1987). When it is not clear whether or to what extent the state treasury must stand behind the judgment debts, then it becomes necessary to perform an analysis of the *Blake/Ainsworth* factors. *Metcalf & Eddy*, 991 F.2d at p. 939.

Although there are similarities between this case and *Metcalf & Eddy*, the same are distinguishable. PRASA, like RDC, performs an essential governmental function; it is separately incorporated as an "autonomous government instrumentality;" it may sue, be sued and enter into contracts; the Governor appoints five of its seven-board members; neither PRASA nor its revenue bonds are taxable; and there is a statutory barrier between PRASA's obligations and the public fisc. *Metcalf & Eddy*, .991 F.2d at pp. 940–42. However, contrary to PRASA, we have found that the Commonwealth government exerts significant control over RDC's planning and administration. Moreover, there is another crucial distinction. In its motion to dismiss, PRASA argued that notwithstanding the Commonwealth's disavowal of its liabilities, the government's significant financial support of its activities triggered Eleventh Amendment protection. *Id.* at p. 940. Differing from this view, the Court stated:

> *Although the central government subsidizes the agency to some extent, PRASA relies mostly on user fees and bonds to support its operations.* The government does not give PRASA a blank check or an indeterminate carte blanche allowing it to draw on the public treasury as it thinks necessary. Thus, control of the money flow from tax dollars is unilateral; if the Commonwealth chooses not to open the faucet, the agency must go thirsty or else, by resort to its own devices, procure the funds needed to stay liquid. (emphasis ours).

*Id.* at pp. 940–41. PRASA's operations are mainly supported by its user fees and bonds, although the government subsidizes them to some extent. In contrast, RDC's operations are supported predominantly by the money provided by governmental sources. If the government chose to "close the faucet" on PRASA, the agency could procure its funds by other means, such as simply raising its user fees. Different would be the case if RDC's governmental funding were cut off. If its lifeline were severed, the RDC would probably cease to exist.

---

11. *See e.g. In re San Juan Dupont Plaza Hotel*, 888 F.2d at p. 940 (Tourism Company held an arm of the state in spite of a statutory provision stating the Commonwealth is not responsible for the debts of the Company.); *Rodríguez Díaz v.*

*Sierra Martínez*, 717 F.Supp. at pp. 30–31 (Puerto Rico Medical Services Administration is an alter ego of the Commonwealth even though the Administration's debts and liabilities do not constitute liabilities of the government).

We believe that a more analogous case to the one at bar is *In re San Juan Dupont Plaza Hotel,* 888 F.2d at 940. In that case, our Circuit held that the Tourism Company of Puerto Rico (hereinafter the Company) was entitled to sovereign immunity. Similar to RDC, the Company performs a governmental function in promoting the tourism industry and supervising gambling in the casinos; the government exerts significant control over the planning and administration of the Company since there is constant communication between the executive's branch and the agency's head, the governor appoints the members of the Company's board of directors, and the Company is required to submit financial and progress reports to the Governor and Legislature at the beginning of each term; the Company has "legal existence and personality independent of the Commonwealth Government" (*see* 23 L.P.R.A. § 671a); and it has the power to control its own properties (23 L.P.R.A. § 671d(f)); to enter into contracts (23 L.P.R.A. § 671d(g)); to make loans and issue bonds (23 L.P.R.A. § 671d(1)); its property is exempt from state taxes (23 L.P.R.A. § 671o); and there is a statutory provision stating that the government is not responsible for the debts of the Company (23 L.P.R.A. § 671k). *In Re San Juan Dupont,* 888 F.2d at pp. 943–44.

The similarity increases when the financial dependence of the Company is considered. In reviewing this factor, the Court found that 72.9% of the Company's budget came from the general funds of the Commonwealth treasury. *Id.* at p. 943. A sworn statement by the Company's Executive Director attested to the fact that payment of any judgment would have to be made by the Commonwealth. *Id.* The Court found these facts probative of an effective liability against the Commonwealth in the event judgment was entered against the Company stating:

> These matters do not persuade us. Notwithstanding the statutory provision stating that the Commonwealth is not responsible for the debts of the Tourism Company, the district court found that roughly 70–75 percent of the funds available to the Tourism Company are provided by the taxpayers of the Commonwealth. To that extent, a judgment enforced against the Tourism Company is effectively a liability of the Commonwealth.

*Id.* at pp. 943–44.

This court believes that the analysis in *In re San Juan Dupont* is entirely applicable. After weighing all the factors, we conclude that RDC's governmental function, the degree of governmental control exerted over the agency, coupled with its financial dependence upon the Commonwealth's treasury, definitely tip the balance in favor of recognizing Eleventh Amendment immunity. For the reasons stated above, summary judgment shall be entered in favor of the Department of Sports and Recreation and the Recreational Development Company dismissing for lack of jurisdiction all the claims brought against them. Partial judgment shall be entered accordingly.

SO ORDERED.